CALVIN B. POTTER v. THE INDIANA & LAKE MICHIGAN RAILWAY COMPANY.

*Waters and water-courses—Obstruction of navigable stream— Right of action—Damages.*

1. A land-owner whose sole interest in a navigable stream is the right to its use as a public highway in common with the public cannot maintain a private suit for its obstruction.

2. Where land upon a navigable stream is only useful in connec-

tion with a shipping and freighting business, and it is problematical whether it will ever be in demand for that purpose, damages claimed by the owner for the obstruction of the stream are purely speculative.

8. Where a canal is constructed and maintained at private expense, it is like a private road built and maintained in the same way, over which the public is permitted to travel, but in which it obtains no vested rights.

Error to Berrien.    (O'Hara, J.)    Argued February 16, 1893.    Decided April 21, 1893.

Case.    Both parties bring error.    Reversed, and judgment entered for the defendant.    The facts are stated in the opinion.

*George S. Clapp,* for plaintiff, contended:

1. The right of a private citizen to appeal to the law, and recover compensation for damages wrought by a public nuisance, has passed beyond the domain of debate; citing *Maxwell v. Bridge Co.,* 46 Mich. 289; *Joslyn v. City of Detroit,* 74 Id. 463; *Pearsall v. Supervisors,* Id. 558; *City of Grand Rapids v. Powers,* 89 Id. 94; *Pumpelly v. Green Bay Co.,* 13 Wall. 166; and, as the bridge imposed a continuous burden on plaintiff's estate, he was entitled to recover for the whole damage at once; citing above cases, and *Town of Troy v. Railroad Co.,* 23 N. H. 83; Wood, Nuis. § 869.

*L. C. Fyfe* and *C. B. Potter, Jr.,* for plaintiff.

*David Strouse* and *Edward Bacon,* for defendant.

GRANT, J.    Plaintiff is the owner of an undivided half interest in five University lots, numbered 14, 16, 17, 24, and 25, located in a marsh on the left bank of the St. Joseph river, near its mouth.    Each lot contains five acres. The lots are situated on section 24, township 4 S., range 19 W., and, with 25 similar lots, comprise the S. W. ¼ of said section.    This land was granted by the United States to the State of Michigan for University purposes, and in 1842 was divided and platted into lots for sale.    Plaintiff

became the purchaser in 1881. The defendant's road was constructed in 1888. In October, 1890, the defendant and the township of St. Joseph made a contract for the construction of a viaduct, which is the subject of this controversy, and which was constructed according to the contract, and accepted by the municipality. The village of St. Joseph is situated on the high ground on the left bank of the river, directly opposite the viaduct. The village of Benton Harbor is situated on the high ground on the right bank of the river. These two villages, in 1890, had a population of over 7,000. Across the river is a bridge with a swing. The viaduct and the bridge across the river are a part of the only public highway between the two villages. The viaduct is required by public convenience and necessity. It is over a bayou which was originally connected with the river upon the north, and is now extended to the river upon the south. The old bayou was crooked, and extended across plaintiff's lots 14 and 16. In 1881 a canal was dredged, by private subscription, to the westward of the old bayou, from a point on lot 2 southward to the river. The old bayou is connected with this canal near the northerly side of lot 2. The situation will appear upon the plat on page 392.

The viaduct is situated upon lot 1, 100 rods distant from plaintiff's nearest lot. The clear space between the water and the viaduct is $24\frac{1}{2}$ feet, and its width 40 feet. In 1842 a bridge was constructed across the St. Joseph river for a territorial road, and one across this same bayou for the same road, on lot 1. This bridge was lower than the present viaduct, had no draw or swing, and existed for more than 30 years. In the original surveys by the United States government, this bayou was unmeandered. In 1881, when the canal was dug, the old bridge was removed, and a swing put in its place, about eight feet above the water. At this time the old bayou, to whatever extent it may

have been used prior to that for navigation, was evidently abandoned. In September, 1891, by actual measurement, the depth of the water in this old bayou, where it empties into the canal, was 2 feet; at the corner of lots 9, 10, 11, and 12, it was 4½ feet; at the corner of 9, 8, 13, and 12, it was 3 feet; at the corner of 7, 8, 13, and 14, it was 2½ feet; at the corner of 14, 15, 16, and 17, it was 2 feet; and across lot 16, it was 18 inches.

The old bayou, originally, did not extend to the river upon the south, but was plowed and scraped out by the highway commissioners to afford an escape for the surplus water from the river, which, with the ice, was dangerous to the bridge below. The river itself is a navigable stream, and was once quite extensively used, but is now practically abandoned for that purpose. A mile above the viaduct is another bridge across the river, which has existed for many years, has no swing, and is considerably lower than the viaduct. No wharves, manufactories, or buildings of any kind have ever been constructed on any of these low lands above the viaduct, except a mill, which was erected on the west side of the canal, but was a failure, and was long ago abandoned. There has been no navigation, of any consequence, for many years, in the canal above the viaduct. The swing bridge had become somewhat impaired, and three months before the contract for the construction of the viaduct the public authorities caused it to be permanently fastened so as to prevent any attempt to swing it. The only use made of the bayou or canal above the viaduct, according to the plaintiff's own testimony, is that, while this factory was running, material was taken to it on scows or lighters. He had also seen one small river steamer go through. He thought this steamer went through the channel while the river bridge was being built, and, according to his recollection, he had seen sailing vessels in the bayou, south of the viaduct.

Plaintiff, in his declaration, alleges that this bayou is a navigable stream; that the viaduct obstructs its use, and has thereby depreciated the value of his lots.    He recovered a verdict of $300.

1.  Plaintiff cannot maintain this action unless he has shown that he has sustained some special or peculiar damage, separate and distinct from that sustained by the public at large.    Gould, Waters, §§ 122, 128, and authorities there cited; *Blackwell v. Railroad Co.*, 122 Mass. 1; *O'Brien v. Railroad Co.*, 17 Conn. 372.    There is no testimony to sustain the claim that the old bayou is a navigable stream.    Even if the canal is navigable, none of the plaintiff's lands adjoin it.    He therefore has no interest except that possessed by the public in common, viz., the right to the use of the stream as a public highway.    If he may maintain the action, so may any other land-owner living above the viaduct.    Under these circumstances, the only course open to him was to apply to the proper public authorities to take proceedings to abate the structure as a public nuisance.

2.  Plaintiff has shown no special damages, even if the old bayou which reaches his land were a navigable stream. He alleges in his declaration that his lands are suitable for dockage, warehousing, manufacturing, lumber and coal yards, and such other purposes as are common in connection with shipping and freighting business.    It is evident that they are useful for no other purpose.    Whether there will ever be a demand for them for such purposes is problematical.    His damages, therefore, are purely speculative.

3.  The canal was purely a private enterprise, and the public never obtained any rights, by prescription or otherwise, in it.    It was constructed mainly on account of the erection of the mill on lot 6.    There was but little, if any, occasion for its use after that enterprise failed.    Whatever use was made of it did not constitute it a public

highway. It was like a private road constructed and maintained at private expense, over which the public is permitted to travel, but in which it obtains no vested rights.

Judgment is reversed, and judgment entered in this Court for the defendant, with costs of both courts.

HOOKER, C. J., McGRATH and LONG, JJ., concurred. MONTGOMERY, J., did not sit.