FORBES PIONEER BOAT LINE, A CORPORATION, *Plaintiff in Error,* v. BOARD OF COMMISSIONERS OF EVERGLADES DRAINAGE DISTRICT, A CORPORATION, *Defendant in Error.*

Opinion filed May 30, 1919.

1. Matters of fact dehors the pleadings are not within the province of the demurrer.

2. An allegation in a declaration that payment of toll for passage through the lock of a canal was made upon the wrongful and unlawful demand of a governmental agency is a sufficient showing of involuntary payment especially in the absence of a specific ground in the demurrer raising such point.

3. The Board of Commissioners of Everglades Drainage District is a public quasi-corporation, and, as such, a governmental agency of the State for certain definite purposes, having such authority only as is delegated to it by law.

4. In order to levy and collect a toll upon a public canal there must be a grant from the sovereign either in express terms or by necessary implication.

5. The law establishing the Everglades Drainage District, creating the Board of Commissioners of such District, and defining its powers, Chapter 6456, Laws of Florida, 1913, as amended by Chapter 6957, Laws of Florida, 1915, and as further amended by Chapter 7305, Laws of Florida, 1907, neither expressly nor by fair inference authorizes the levy and collection by the Board of Commissioners of Everglades Drainage District of a toll for the use of the lock in the North New River Canal contructed by it and its predecessors.

An Appeal from the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment reversed.

*Carson, Pine & Willard* and *Thomas B. Norfleet,* for Plaintiff in Error;

*Glenn Terrell,* for Defendant in Error.

GIBBS, Circuit Judge.—The Forbes Pioneer Boat Line, a corporation, has sued the Board of Commissioners of Everglades Drainage District, a corporation, for recovery of certain alleged tolls which it says were wrongfully demanded of and received from it by the defendant in error. In the Circuit Court the following declaration was filed:

"Forbes Pioneer Boat Line, a corporation, Plaintiff, vs. Board of Commissioners of Everglades Drainage District, a corporation, Defendant.

"Forbes Pioneer Boat Line, a corporation, by its attorneys, sues the Board of Commissioners of Everglades Drainage District, a corporation, for that, on to-wit, August 1, 1913, the said plaintiff then and there being a corporation, and as such was engaged in the business of trasnporting by boat passengers and freight from Fort Lauderdale, Florida, to Rita Island and other places in said State, and from Rita Island and other places to Fort Lauderdale, Florida; that in the conduct of its said business it became and was necessary for the boats of plaintiff to pass over, through and upon the waters of North New River Canal, which said canal, under and by virtue of an act of the Legislature of the State of Florida, approved June 6th, 1913, was and is for certain purposes, under the supervision and control of the defendant; that said defendants and their predecessors have caused to be constructed across and upon said canal a certain lock in Broward County, Florida, within the Everglades Drainage District for the purpose, among other things, of controlling and regulating the flow of water through said canal; that on, to-wit, August 1, 1913, the said defendant, through its servants, agents and employees, wrongfully demanded of and received from the plaintiff the sum of $6.50 for toll for passage through the said lock of one of its boats, and has since that date, upon many and divers occasions, and up to the present time, regularly made charges and collected tolls from the plaintiff upon each and every boat belonging to plaintiff which passed through said lock in the amount of ten cents per lineal foot and in the aggregate sum of $864.00; that said sum

so collected, and each item thereof, was wrongfully and unlawfully levied and collected.

"Wherefore plaintiff brings its suit and claims $1250.00 damages."

To this declaration the defendant demurred.

The demurrer was sustained and final judgment entered in favor of the defendant. To this judgment the plaintiff applied for and obtained a writ of error.

The single assignment of error is predicated upon the action of the Court in sustaining the demurrer of the defendant.

It is unnecessary to set forth the several grounds of demurrer only two of which can be considered, to-wit:

"(1) That it does not appear from the averments of said declaration that the toll charges for the use of said canal by said plaintiff is unlawful or unauthorized."

"(2) That said canal was constructed primarily for the purpose of draining the lands through which it runs and making it habitable and fit for use, and said canal is maintained by a tax or assessment on such lands imposed for this purpose, as appears from the statute referred to in said declaration; that the use of said canal for navigation is incidental and subject to regulation by said defendant; that said plaintiff has no right to its free use and enjoyment for commercial purposes."

The other grounds introduce matters of fact which do not appear upon the face of the declaration and are, therefore, not within the province of a demurrer, and cannot be considered. State ex rel. F. A. Garrison, appellant, vs. The County Commissioners of Putnam County,

23 Fla. 632, 637, citing Gould's Pleading, Ch. 2, Sec. 43; Ch. 9, Sec. 2. See, also, 6 Ency. Pl. & Pr. (6), p. 298.

It is also fundamental that we can only consider those grounds properly stated in the demurrer. For this reason, we cannot consider the right of plaintiff to recover because it has failed to allege that the payments made by it were not made voluntarily. State ex rel. Kittel vs. Trustees I. I. Fun, 47 Fla. 302.

The sole question presented, therefore, is the legality of the action of the Board of Commissioners in demanding and receiving tolls. We are not concerned with a canal built wholly on private land by the owner thereof. but with a canal built through public and private lands by a governmetnal agency.

The law establishing the Everglades Drainage District, creating the Board of Commissioners of such District, and defining their powers is Chapter 6456, Laws of Florida, 1913, as amended by Chapter 6957, Laws of Florida, 1915, and as further amended by Chapter 7305, Laws of Florida, 1917.

This Act is entitled:

"AN ACT to Establish the Everglades Drainage District in This State and Define Its Boundaries, to Create a Board of Commissioners for Said District and to Define Its Powers, Authorizing the Construction of Canals, Drains, Dikes, Reservoirs and Other Works for the Reclamation and Benefit of the Lands Embraced in Said District and to Levy Assessments of Taxes Upon the Lands Embraced in Such District and to Provide for the Collection of the Same and the Sale of Lands to Enforce the Collection of Such Assessments and to Authorize the

Board of Commissioners of said District to Borrow
Money and to Issue Bonds and Dispose of the Same, to
Procure Money to Carry Out the Provisions of This Act,
to Prevent Injury to Any Works Constructed Under This
Act, and to Provide a Penalty for Violating Such Provi-
sions."

And the sections pertinent to this inquiry are as fol-
lows :

"Section 1. That for the purpose of draining and re-
claiming the lands hereinafter described and protecting
the same from the effects of water, for agricultural and
sanitary purposes, and for the public convenience and
welfare, and for the public utility and benefits, a drain-
age district is hereby established to be known and desig-
nated as the Everglades Drainage District, the territor-
ial boundaries of which shall be as follows, to-wit:"
(Here follows boundaries of lands embraced in District,
which it is unnecessary to enumerate.)

"Section 2. The Governor, the Comptroller, the State
Treasurer, the Attorney-General and the Commissioner of
Agriculture of the State of Florida, and their successors
in office, are hereby constituted the governing board of
said District and shall be desiganted the 'Board of Com-
missioners of Everglades Drainage District,' with all the
powers of a body corporate including the power to sue
and be sued by said name in any court of law or equity,
to make contracts and to adopt and use a common seal
and alter the same at pleasure, to hold, buy and convey
such personal or real property as may be necessary to
carry out the purposes of this Act, to appoint such agents
and employees as the business of the Board may require,
and to borrow money and to issue bonds therefor, as here-

inafter provided, to enable the said Board to carry out the provisions of this Act."

"Section 3.   The said Board is hereby authorized and empowered to establish and construct a system of canals, drains, levees, dikes, dams, locks and reservoirs of such dimensions and depth and proportions as in the judgment of the said Board is deemed advisable to drain and reclaim the lands within said drainage district, and to maintain such canals, drains, levees, dikes, dams, locks and reservoirs in such manner as said Board shall deem most advantageous.   Said Board is hereby authorized and empowered to clean out, straighten, widen, change the course and flow, alter or deepen any ditch, drain, river, water course, pond, lake, creek, or natural stream in or out of said district that may be deemed necessary by said Board to be done to facilitate the drainage and reclamation of the territory in said district; to construct and maintain main and lateral canals or ditches to construct such levees, dikes, sluices, revetments, reservoirs, pumping stations and other works and improvements deemed necessary to preserve and maintain the works in said district; to construct any bridge or roadway over any levees, embankments, public highways, railroad right of way, track, grade, fill or cut, or across any stream or pond that may be necessary to facilitate the work of draining and reclaiming the territory or any part thereof embraced in said district; said Board shall have the power and authority to hold, control and acquire by donation or purchase for the use of the district any real or personal property, to condemn any lands, easement, railroad right-of-way, in or out of said district, for a right-of-way for any canal, ditch, drain or reservoir, or for material to be used in constructing and maintaining

said works and improvements for draining, protecting and reclaiming the lands in said district."

"Section 4. That the said Board is hereby authorized and empowered to exercise the right of eminent domain and may condemn for the use of said district any and all lands, easements, rights-of-way, riparian rights, and property rights of every description required for the public purposes and powers of said Board as herein granted, and may enter upon, take and use such land as it may deem necessary for such purposes, pending condemnation proceedings."

Section 5, Chapter 6456, as amended by Section 1, Chapter 6957:

"Section 5. For the purpose of constructing, completing and maintaining the works of drainage and reclamation hereby authorized for the benefit and protection of the lands in said district, annual assessments of taxes shall be and are hereby levied and imposed upon all the lands within said district, as follows, to-wit:" (It is unnecessary to insert description of land.)

"Section 6. The proceeds arising from the acreage tax levied by this Act shall be used by the said Board in the construction and maintenance of such canals, drains, levees, dikes, dams, reservoirs, sluices, revetments and other works and improvements as the said Board may deem necessary or advisable to drain and reclaim the lands in said district, and to the continuation of the construction of such canals, dams, locks, levees, and reservoirs as are now in process of construction within said drainage district, and to the purchase of lands or personal property as the Board may deem necessary to carry out the purposes of this Act, and to the expenses of the

Board in the conduct of said work and its business generally, and to repay any loans and the interest thereon, and to the creation of a sinking fund for the retirement of the principal of the bonds that the Board may issue under the provisions of this Act, and to the payment of the interest thereon."

Section 16, Chapter 6456, as amended by Section 7, Chapter 6957:

"Section 16. When land is bid off by the Tax Collector for the said Board, the tax certificate shall be issued by the Tax Collector as of the date of sale in the name of the Board of Commissioners of Everglades Drainage District, and if the land is not redeemed on or before two years from the date of such certificate the title to the same shall immediately vest in the said Board without the issuing of any deed as provided in other cases, and the certificates held by the said Board shall be evidence of the title of the said Board. The said Board may sell and convey the said lands by deed at the best price obtainable therefor, provided such price shall not be less than the amount of all drainage taxes upon said lands which shall have become due and payable pursuant to the provisions of this Act prior to such sale; and provided further that no such lands shall be sold by the said Board until four weeks' notice of the said Board's intention to make such sale shall have been published once each week in a newspaper published in the county in which such lands lie, and if there be no newspaper published in such County, then such notice shall be published as aforesaid in a newspaper published in Jacksonville, Florida. The Board may reject any and all bids offered for said lands.

"The deed of conveyance executed by the said Board to any such lands shall be signed by the members of said

Board and attested by the Secretary with the seal of the said Board and shall vest in the grantee of such deed the fee simple estate to such lands, free from all liens of any character except such liens as may exist for State and County taxes thereon, and such deed shall be incontestible. The proceeds of the sales of said lands shall be applied by the said Board in the payment of bonds and other indebtedness incurred pursuant to the provisions of this Act and in the construction, completion and maintenance of the works authorized by this Act."

By Section 4, Chapter 7305, the above section is amended, so that the Trustees of the Internal Improvement Fund are substituted therein for the Board of Commissioners of Everglades Drainage District. The latter part of this section is changed with reference to the disposition of the proceeds arising from the sale of lands for non-payment of drainage taxes. In the amended section such proceeds shall be applied by the Trustees in the payment of drainage taxes or assessments or other obligations of said Trustees. With the effect of this amendment upon the withdrawal of a portion of the fund set apart in the law before this amendment for the construction and maintenance of these drainage canals, and permitting another agency of the State to use it for other purposes we are not concerned in this opinion. The case at bar is not affected by such change. Our inquiry is directed to the status of the Board of Commissioners of Everglades Drainage District when created. The amendments of Chapter 7305 do not change this status.

Section 19, Chapter 6456, as amended by Section 10, Chapter 6957, provides in part:

"Section 19. The Board of Commissioners of Everglades Drainage District is hereby authorized and em-

powered to borrow money on permanent loans and incur obligations from time to time on such terms and at such rates of interest as it may deem proper, not exceeding six per cent, for the purpose of raising funds to continue and prosecute to final completion the canals, drains, dikes, dams, locks and reservoirs now in process of construction in the territory embraced in said district, and to build and construct such other canals, drains, dikes, dams, locks, reservoirs, and other works as the said Board may deem advantageous to the territory embraced in said drainage district, and to pay the expenses incident to such work and all expenses necessary or needful to be incurred in carrying out the purposes of this Act. And the better to enable said Board to borrow the money necessary to carry out the purposes aforesaid, the said Board is hereby authorized and empowered to issue in the corporate name of said Board negotiable coupon bonds of said Everglades Drainage District."

"Section 23. This Act shall without reference to any other Act of the Legislature of Florida, be full authority for the issuance and sale of the bonds in this Act authorized which bonds shall have all the qualities of negotiable paper under the law merchant, and shall not be invalid for any irregularity or defect in the proceedings for the issue and sale thereof, and shall be incontestible in the hands of bona fide purchasers or holders thereof for value. No proceedings in respect to the issuance of any such bonds shall be necessary except such as are required by this Act. The provisions of this Act shall constitute an irrepealable contract between the said Board and said Everglades Drainage District and the holders of any bonds and the coupons thereof, issued pursuant to the provisions hereof. Any holder of any of said bonds or

coupons may either at law or in equity by suit, action or mandamus enforce and compel the performance of the duties required by this Act of any of the officers or persons mentioned in this Act in relation to the said bonds, or to the collection, enforcement and application of the taxes for the payment thereof, Provided, however, that no obligation authorized by this Act shall be construed as an obligation of this State, but only as the obligation of the Drainage District herein created."

"Section 27. The Board of Commissioners of Everglades Drainage District is hereby authorized and empowered to carry on and complete any and all canals, drains, ditches, and works of reclamation which have heretofore been begun within the said territory, and the said Board shall be and is hereby vested with all the powers and duties conferred by Chapter 5377 of the Laws of Florida, Acts of 1905, approved May 27, 1905, and by Chapter 5709 of the Laws of Florida, Acts of 1907, approved May 28, 1907, and by an Act passed at the present session of the Legislature and entitled, 'An Act to Authorize the Board of Drainage Commissioners to Borrow Money and to Apply the Drainage Tax Assessed upon the Lands in the Drainage District to the Repayment of the said Loans and to provide for suits against the Board of Drainage Commissioners in Certain Cases,' approved April 29, 1913, upon the Board of Drainage Commissioners referred to in said statutes, and it shall be and it is hereby made the duty of the said Board of Commissioners of Everglades Drainage District to collect any and all taxes for the year 1912 and prior thereto heretofore levied and imposed by or pursuant to the said Acts, Chapters 5377, Acts of 1905, and 5709, Acts of 1907, and to apply the said taxes when collected in the completion

48—Vol. 77.

of the works undertaken by the Drainage Commissioners acting under the said Acts and in the payment of the lawful contracts, debts and obligations entered into and incurred by such Drainage Commissioners under said Acts. Nothing in this Act contained shall be deemed to affect, qualify or limit the powers of the Trustees of the Internal Improvement Fund or of the trusts upon which the said Trustees hold lands within the limits of said Everglades Drainage District."

In Section 27, *supra,* reference is made to Chapter 5377, Laws of Florida, 1905, the title to which Act is as follows:

"AN ACT relating to the Drainage and Reclamation of the Swamp and Overflowed Lands in Florida; to Create a Board of Dainage Commissioners, Prescribing Its Powers and Duties, Authorizing the Establishment of Drainage Districts, Establishing a Drainage System, the Build: of Canals, Levees, Dikes and Reservoirs for the Purpose of Drainage, Irrigation and Commerce, the assessment of Lands to be Drained and Benefited, the Collection of Necessary Funds by Assessment of Benefits and Taxation, Providing for The Management and Maintenance Thereof and for the Exercise of the Right of Eminent Domain and for the Sale and Uses of said Lands for the Purposes of Drainage, Reclamation and Improvement Aforesaid."

Section 1 of such Act provides:

"The Governor, the Comptroller, the State Treasurer, the Attorney General and the Commissioner of Agriculture of the State of Florida, and their successors in office, are hereby constituted and designated as a Board of Drainage Commissioners, and are hereby authorized and

empowered to establish a system of canals, drains, levees, dikes and reservoirs of such dimensions and depths as in the judgment of the said Board of Drainage Commissioners is deemed advisable to drain and reclaim the swamp and overflowed lands within the State of Florida, or such parts or portions thereof, as is deemed best by said Board of Drainage Commissioners from time to time, and to provide for the irrigation of the lands reclaimed, and to maintain such canals, drains, levees, dikes and reservoirs in such manner as will be most advantageous to the territory so drained the State of Florida, its inhabitants and the commerce thereof."

In 1907, by Chapter 5709, Section One of the Act just cited, is amended and it will be noted that the words "and the commerce thereof" are omitted, and substituted therefor are the words "advantageous to the territory so drained." This Section is as follows:

"Section 1.   That Section 1 of Chapter 5377, Laws of Florida, approved May 27, 1905, be and it is hereby amended so as to read as follows:

"Section 1·   The Governor, the Comptroller, the State Treasurer, the Attorney General and the Commissioner of Agiculture of the State of Florida, and their successors in office, are hereby constituted and designated as a Board of Drainage Commissioners, and are hereby authorized and empowered to establish a system of canals, drains, levees, dikes and reservoirs of such dimensions and depth as in the judgment of said Board of Drainage Commissioners is deemed advisable to drain and reclaim the swamp and overflowed lands within the drainage districts hereinafter designated, and to maintain such canals, drains, levees, dikes and resesvoirs in such manner as will be most advantageous to the territory so drained."

What is the status of the defendant in error, which is sued as a corporation? Is it a public, public quasi, quasi-public, or private corporation?.

A private corporation is one formed for the benefit of its stockholders exclusively. When it is invested with certain powers of a public nature to permit it to discharge duties to the public, it loses its strictly private character and becomes quasi-public. A corporation is public when created for public purposes only, connected with the administration of government, and where the whole interests and franchises are the exclusive property and domain of the government itself. 7 R. C. L. Sections 14 and 16, pages 40, 41 and 42. Public corporations "are subdivided into municipal and public quasi corporations. Municipal corporations embrace incorporated cities, villages and towns which are full fledged corporations with all the powers, duties and liabilities incident to such status, while public quasi corporations possess only a portion of the powers, duties and liabilities of corporations. As an instance of the latter may be mentioned counties, townships, overseers of the poor, school districts and road districts." Quoted by the Court in Duval County in Duval County v. The Charleston Lumber Company, 45 Fla. 256, text 259, 33 Southern 531, from Beach on public corporations, vol· 1, section 3. In the later case of Keggin v. Hillsborough County, 71 Fla. 356, 71 Southern, 372, we have held that a county is a political subdivision of the State and not a corporation.

It seems to us that the Board of Commissioners of Everglades Drainage District is in no sense a private corporation, but that it is a public *quasi*-corporation, and, as such, a governmental agency of the State for certain

definite purposes, having such authority only as is dele-gated to it by law.

What are these purposes and does this authority in-clued the levy and collection of a toll for the use of the lock in question?

By its very terms, "drainage district" implies that the lands therein are to be drained. It is a matter of com-mon knowledge that within this territory is a great body of submerged land and the only purposes of this act are the drainage reclamation and protection from water of the lands in the "District." A mere reading of the sev-eral quoted sections makes this very plain.

For these purposes the Board of Commissioners is auth-orized to construct and maintain canals, drains, levees, dikes, dams, locks, reservoirs, etc., to exercise the power of eminent domain, to have all the powers of a body cor-porate, and, to defray the expense of the works within the district, pursuant to the act, to levy taxes, borrow money, and issue bonds and other obligations.

That the Legislature intended to preserve the distinc-tion between the Board of Commissioners of Everglades Dainage District and the Everglades Drainage District is shown by section 23, *supra,* in the words:

"The provisions of this Act shall constitute an irrepeal-able contract between the said Board and said Ever-glades Drainage District and the holders of any bonds and the coupons thereof, issued pursuant to the provi-sions thereof."

That there was to be no question as to the liability of the State of Florida is shown in the last part of the same section as follows:

"Provided, however, that no obligation authorized by this Act shall be construed as an obligaiton of this State, but only as an obligation of the Drainage District herein created."

And see Lainhart v. Catts, 73 Fla· 735, 75 So. 47.

Section 27 of Chapter 6456, *supra,* practically substitutes the Board of Commissioners of the Everglades Dainage District for the Board of Drainage Commissioners in the matter of the drainage and reclamation of the land within the Everglades Drainage District, giving to it all powers and duties by the several acts therein referred to vested in the Drainage Commissioners.

It will be noted that in the Act of 1905, Chapter 5377, the titlue includes, "the building of canals, levees, dikes, and reservoirs for the Purpose of Dainage, Irrigation and *Commerce,"* and Section One of such Act provides in part, "and to provide for the irrigation of the lands reclaimed, and to maintain such canals, drains, levees, dikes and reservoirs in such manner as will be most advantageous to the territory so drained, the State of Florida, its inhabitants *and the commerce thereof."*

In the amendatory Act of 1907 there is an omission in Section One of the word "commerce" the section reading in part as follows: "and are hereby authorized and empowered to establish a system of canals, drains, levees, dikes and reservoirs of such dimensions and depths as in the judgment of said Board of Drainage Commissioners is deemed advisable *to drain and reclaim t*he swamp and overflowed land within the drainage districts hereinafter designated, and to maintain such canals, drains, levees, dikes and reservoirs in such manner as will be most advantageous *to the territory so drained."*

The change is significant and it is clear therefrom that there was no intention of the legislature to permit the Board of Drainage Commissioners to construct canals or build locks thereon for commercial purposes.

A careful examination of the Acts of the legislature does not reveal any express power or authority granted the defendant in error to levy a toll upon boats passing through the lock in question. In much detail have the various powers been set out. The careful enumeration of these powers is an indication that this Board was not to have any others than those enumerated. *Expressio unius est exclusion alterius·*

It is to be remembered that this Board as the agent of the State within the "Drainage District" is a body of limited powers and authority the boundaries being set forth in the law of its creation and the amendatory acts referred to.

It is urged that the power to maintain the canal gives the power to collect necessary tolls, but a refutation of this contention is found in the Act itself. See particularly Sections Five and Six of Chapter 6456, *supra,* where it is enacted that the purposes of the levy of the acreage tax is to *maintain* as well as to *construct* the works of drainage. Ample provision by taxation and loans has been made for the maintenance of the canals, locks and other works of drainage, showing a clear intention of the legislature, by its exclusion thereof, that from no other source than those named in the Act is the revenue for such maintenance to come.

The question of the navigability of the canal has been argued by counsel, but we are unable to see that it is important to a decision in this case, where the sole question

is the power of the governmental agency, to-wit, the
Board of Commissioners of the Everglades District, to
charge toll for the use of public property.

There is considerable in the brief of the counsel for
the plaintiff in error as to the reasons for the charging
of the toll in question and the practice respecting the
navigation of the canal, but we are unable to go outside
of the record and must confine ourselves to the allega-
tions of the declaration.

Many cases have been cited to the court upon the rights
of persons and corporations to exact tolls, but we do not
find that any of them are controlling in the case at bar.
We do not think it would be helpful to review in this
opinion all these cases. The law as to the power to ex-
act tolls has been set forth in 4 R. C. L. par. 23 and 24, p.
472 *et seq·*

"As toll is a common charge which it is the prerogative
of sovereignty alone to impose and regulate, the privilege
of exacting it cannot be exercised by a canal proprietor
without a franchise from the State. In the discretion of
the legislature, however, such a franchise may be granted
to private persons who have undertaken the construc-
tion and maintenance of a public canal. The grantee of
such a franchise can exact tolls only to the extent and in
the manner prescribed by its terms." Sec. 23,*ibid.*

The State in its sovereign capacity, having established
the Drainage District, has the power to control and reg-
ulate any of its canals. Although the State possesses
this power of regulation, the officials to whom it in-
tusts the actual management and control of a canal, have
only such powers as are expressly or impliedly conferred
upon them by the statute. 4 R. C. L. par. 14, p. 463. It

is for the legislature, not the courts, to authorize the Board of Commissioners to levy tolls—to impose such burden upon the public. "Those who seek to impose a burden upon the public should take care that their claim rests upon plain and unambiguous language." Leeds and Liverpool Canal Co. v. Hustler, 1 B. & C. 424; 2 D & R. 556; 107 Eng. Repts. Reprint, 157. It seems to us to have been the purpose of the legislature, by the omission from the acts in question of any provision for the payment of tolls, that where these great drainage canals are capable of use for navigation by the people of the State in the prosecution of their lawful business , even though such business be a means of profit to themselves. such people are entitled to the free use of such waterways, which use is limited only by the primary use of such canal as a means of drainage. Certain of the words of general import contained in the first section of Chapter 6456, as to the purpose of the establishment of such District, to-wit, "for the public convenience and welfare, and for the public utility and benefit," are helpful in reaching this conclusion.

The cases cited by counsel for the respective parties upon the subject of collection of tolls, are not, generally, applicable to the case at bar, nor have we been able to find an exactly similar situation elsewhere. The corporations referred to in the decisions cited are for the most part, those from which the stockholders seek to derive a profit. The cases of People v. Jessup, 28 N. Y. App. Div. 524; 51 N. Y. S. 228; Myers v. Foster, 6 Cow N. Y. 567; Commonwealth v. Canal Commissioners, 5 W. & S. (Penn.) 388, are actions in which are concerned the state officials having the control of the canals in the matter of tolls. In these cases, however, it is shown that express power

had been given by the State to these officials to charge
toll. "No man," says Sir Matthew Hale, in his treatise
*de jure maris* c. 3, as quoted in the decision of Wads-
worth v. Smith 11 (2 Fairfield) Maine 278; 26 Am· Dec.
525, "can take a settled or constant toll even in his own
private land for a common passage without the King's
license."

In the case of Myers v. Foster (N. Y.) *supra,* an action
for a penalty for the alleged· violation of an act of the
legislature providing for furnishing an account of prop-
erty moving on a canal. Boatmen carrying passengers
did not report them. The Canal Commissioners had es-
tablished toll on passengers. The Court held that the
Act did not warrant such toll as it only permitted toll
on property and passengers were not property. It can-
not, therefor, be successfully urged that because the auth-
ority to maintain a canal by virtue of the Act is granted
the Board, from this fact may be deduced their right to
exact tolls.

In Perrine v. The Chesapeake and Delaware Canal Co.,
9 How. (U· S.) 172, 13 Law. Ed. 92, in an opinion by
Chief Justice Taney, it is said, text 183, 184:

"This question may be disposed of in a few words.
The articles upon which the company is authorized to
take toll are particularly enumerated, and the amount
specified. The toll is imposed on commodities on board
of a vessel passing through the canal.

"No toll is given on the vessels themeselves, except only
when they have no commodities on board, or not suffi-
cient to yield a toll of four dollars. Passengers are not
mentioned in the enumeration, nor is any toll given upon

a vessel on acount of the persons or passengers it may
have on board.

"Now, it is a well-settled doctrine of this Court, that
a corporation created by statute is a mere creature of the
law, and can exercise no powers except those which the
law confers upon it, or which are incident to its exist-
ence.   Head and Amory v. The Providence Ins. Co., 2
Cranch 127; Dartmouth College v. Woodard, 4 Wheat
636; Bank of the United States v. Dandridge, 12 Wheat,
64;Charles River Bridge v. Warren Bridge, 11 Pet· 544;
Bank of Augusta v. Earle, 13 Pet. 587.   And as no pow-
er is given to this corporation to demand toll from pass-
engers, or from vessels on account of the passengers on
board, it is very clear that no such power can be exer-
cised, and no such toll lawfully taken.

"The principle above stated is also an answer to the
argument which places the right of the company to de-
mand toll upon the ground that it is the absolute owner
of the works, and of the land it occupies, and insists that
it may therefore, like any other owner, demand compensa-
tion from any person passing over its property.   The er-
ror of this argument consists in regarding the title of
the company to the property in question as derived to
them upon common law principles, and measuring their
rights by the rules of the common law.   The corporation
has no rights of property except those derived from the
the provisions of the charter, nor can it exercise any
powers over the property it holds except those with which
the charter has clothed it.   It holds the property only
for the purposes for which it was permitted to acquire it,
—that is, to effectuate the objects for which the legisla-
ture created it.   And whether it may lawfully demand
compensation from a person whom it permits to pass over

its property must deepnd upon the language of the charter, and not upon the rules of comomn law.

"Certainly in this instance the power is not conferred in express terms, nor are any words used from which it can reasonably be implied. It would, indeed, be a most unusual one, and we believe without precedent in any charter heretofore granted by any State in this Union. For the power claimed is the right to demand toll from every citizen who passes through the canal, and to fix the amount at the discretion of the corporation· In form, it is true, the demand is made on the owner of the vessel engaged in transporting passengers; but it is immaterial to the passenger, whether he is charged with the toll in the increased price of his passage, or by a direct tax upon himself. In either case the result is the same, and the power exercised is the same. Such an unlimited power to levy countributions on the public, and one so inconsistent with the ordinary course of legislation upon that subject, and, we may add, so unjust and injurious to the public, ought not to be sustained in a court of justice, unless it is conferred in plain and express words. It should not be inferred where the slightest doubt could arise, and the words are capable of any other construction; and still less can it be inferred in a charter like this, where the toll granted upon the goods and property of every kind is so carefully specified and fixed in the law, and the charter altogether silent in relation to passengers. The contrary influence would seem to be irresistible."

And see Stourbridge Canal Co. vs. Wheeley, 2 B. & A. 792; 22 E. C. L. 333, 109 Eng. Repts., Reprint, 1336; Leeds and Liverpool Canal Co. vs. Hustler, 1 B. & C. 424,

2 D. & R. 556, 107 Eng. Repts., Reprint, 157; Stockton, etc., R. R. Co. vs. Barrett, 7 Eng. Repts., Reprint, 1225.

Counsel argues that the work of the Board of Commissioners is an enterprise conducted under the police power of the State and cites the case of Harvey vs. Potter, 19 La. Ann. 264, s. c. 30 La. Repts., West Pub. Co. Ann. Ed., 205, quoting at length therefrom. We do not see how it sustains plaintiff-in-error's position. The facts in that case were that the plaintiffs owning a body of land extending from the Mississippi River five or six miles back to the Bayou Barrataria, enlarged and much improved a canal constructed originally by the ancestor of one of the plaintiffs, which in its improved condition was navigable for boats of considerable size and great facilities were offered by it for transporting from the interior wood, lumber, fish and other commodities destined for the New Orleans market. The defendant in the case had availed himself of the use of the canal in transporting by boat, wood and lumber. It was simply a question of the right of private owners of land to charge for the use of a canal constructed by them within the boundaries of their land. The Louisiana Court had already in the case of Boykin vs. Shaffer, 13 La. Ann. 129, 27 La. Repts., West Pub. Co. Ann. Ed., 105, held that the right to charge toll for the use of a lock on a watercourse rendering navigable a bayou which was not otherwise navigable, save for a short time each year, was a franchise which the Sovereign alone could grant. The Louisiana Court in the case first cited merely applied the law applicable to a private owner, which is not applicable here. The case of Potter vs. Indiana & L. M. Ry. Co., 54 N. W. 956, is also a case involving the right of a private owner and inapplicable to the case at bar. The Court held the canal

in question was purely a private enterprise and that the public had never obtained any rights by prescription, or otherwise, in it.

The case of Commonwealth vs. Canal Commissioners, 5 W. & S. (Penn.) 388, is also cited by counsel for the plaintiff in error, but in that particular case it is shown that the Canal Commissioners had expressly the power to collect tolls. The principal purpose of the case of People vs. Reclamation Dist. No. 108, 53 Cal. 346 (as was said by the Court), was to procure a judgment to the effect that the Reclamation District was not legally created and had no legal existence when suit was brought. The Court held that its recognition by the legislature as a corporation was sufficient. We fail to see how this case supports the contention of plaintiff in error.

Further insisting upon the right of the Board of Commissioners to charge toll for use of the lock in question, the defendant in error says that the Board did not hold out the canal as a water course for transportation purposes, but that such use was obtained at the solicitation of the plaintiff. The declaration is silent as to such solicitation, but alleges, on the contrary, "that the said defendant, through its servants, agents and employees wrongfully demanded of and received from the plaintiff" the sum named therein "for toll for passage through the said lock of one of its boats, and has since said date, upon many and divers occasions, and up to the present time regularly made charges and collected tolls from the plaitiff upon each and every boat belonging to the plaintiff which passed through said lock" in the amount named therein. "That said sum, so collected, and each item thereof, was wrongfully and unlawfully levied and collected."

The defendant in error is erroneously attempting to apply in this case the law applicable to private owners. There is nothing in the case of Dwinnell vs. Barnard, 28 Me. 554, 48 Am. Dec. 507, which in any way supports the contention of the plaintiff in error as applied to the facts in the case at bar.

The case of Olcott vs. Banfield, 4 N. H. 537, was an action in assumpsit by plaintiff for "toll" and "canalage," etc. The defense was that there was no authority to charge toll as the charter powers had not been complied with. The Court held that plaintiffs could not rely upon the charter, nor did they attempt to do so; and that while they might have dedicated the use of the canal to the public without a charter, so as to make it illegal to charge toll, that there had been no such dedication. The case of State vs. Olcott, 6 N. H. 74, was a quo warranto proceeding against Olcott and others to oust them from their privileges and franchises, to-wit, the right to exact toll. The information alleged a usurpation of the right of demanding and taking toll for passing certain locks and canals, the respondent pleaded that they made the locks and canals on their own land, and at their own expense, and took a reasonable compensation for passing, by agreement with those who passed the locks and canals, and traversed the usurpation. To this the State replied that the locks were made under a charter from the State, and dedicated to the public use, and toll taken according to the charter for twelve years, after which it was taken without right. Upon demurrer, the replication was held to be sufficient in law. There is nothing in either of these cases which militates against the conclusion we have reached in this opinion.

The Board of Commissioners of the Everglades Drainage District were without authority to exact a charge in the nature of a toll from the plaintiff in error. The Circuit Court, therefore, was in error in its ruling upon the demurrer. This ruling of the Circuit Court is reversed and this cause remanded to such Court with instructions to overrule the demurrer to the declaration and for such further proceedings as are not inconsistent with this opinion.

BROWNE, C. J., AND TAYLOR AND ELLIS, JJ., concur.

WHITFIELD, J., dissents.

WEST, J., disqualified.